UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LABEED NOURI, et al.,

        Plaintiffs,
                                    Case No. 17-cv-12322
                                    Hon. Mark A. Goldsmith

vs.

VITO MANZELLA,

        Defendant.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Dkt. 13)

This matter is before the Court on Defendant Vito Manzella's motion to dismiss Plaintiffs Labeed Nouri, Health O Rama Urgent Care PLLC ("Healthorama"), and St. Peter Medical Center, P.C.'s ("St. Peter") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 13). For the reasons that follow, the Court grants Manzella's motion as to the Fourteenth Amendment claim, but denies the motion as to all other claims.

### I.    BACKGROUND

According to the complaint, Plaintiff Labeed Nouri is an orthopedic surgeon who rents office space in a commercial building ("3058 Metro Parkway"). Compl. ¶ 8 (Dkt. 1). Nouri is affiliated with several businesses located at 3058 Metro Parkway – he owns an urgent care medical clinic, Healthorama, which operates from Suite 205; he maintains his orthopedic surgery practice, St. Peter, at Suite 204;[1] and he rents additional office space from which he operates other

---

[1] Two other physicians are also affiliated with St. Peter and practice from Suite 204. Compl. ¶ 11.

1

businesses, including a physical therapy clinic. Id. ¶¶ 9-10, 11. Defendant Vito Manzella is a state of Michigan district court officer. Compl. ¶ 14.

In February 2015, Nouri purchased an x-ray machine from Unitech Imaging, Inc. ("Unitech"). Id. ¶ 16. There was a "dispute" between Nouri and Unitech regarding payment for the machine, and in October 2016, Unitech obtained a default judgment against Nouri in the amount of $7,163.00. Id. ¶¶ 17-19.

On December 22, 2016, Unitech obtained a request and order to seize property in the amount of $7,200.93. Id. ¶ 21. The parties dispute the validity of this order. Plaintiffs attached a copy of the order to their complaint, which is not endorsed (that is, signed and dated by the court officer executing the order)[2] and states that it is to be served by James Adamo. See Request and Order to Seize Property, Ex. E to Compl. (Dkt. 1-6). Manzella attached a different version of the order to his motion to dismiss, on which the name "Vito Manzella" was handwritten next to the typed name of "James Adamo." See Request and Order to Seize Property, Ex. A to Def. Mot. (Dkt. 13-1). This order is endorsed. In their response, Plaintiffs state that they requested a copy of the order from the state district court, and received yet a third version. See Pl. Resp. at 15. This third order also shows that Manzella's name was handwritten next to Adamo's typed name, but the handwriting is noticeably different than the handwriting in the order provided by Manzella. See Request and Order to Seize Property, Ex. B to Pls. Reply (Dkt. 16-3). This third order is not endorsed.

On the morning of February 10, 2017, Manzella and four other individuals appeared at St. Peter. Id. ¶ 26. Manzella presented a badge and "court paper" to the office receptionist and

---

[2] The "Report of Collection Activity under Order to Seize Property," Ex. H to the complaint, was signed by Manzella and states, "I certify that I received and endorsed the order to seize property on 1-5-17 at 5:30 pm[.]"

asked for payment of the judgment. Id. ¶¶ 26, 28. The receptionist offered a corporate check, but Manzella demanded a cashier's check. Id. ¶ 31.

Nouri was not at 3058 Metro Parkway at the time Manzella arrived, but after being contacted by the receptionist, Nouri spoke to Manzella on the phone around 10:00 a.m. and ensured him that he was on his way to 3058 Metro Parkway. Id. ¶¶ 27, 33, 35. Manzella stated that he would need a cashier's check by 11:00 a.m. or he would "shut the place down." Id. ¶ 34.

Manzella and the four other individuals remained in St. Peter's waiting room until 11:00 a.m., at which point they went into the interior portion of the office, including into the Healthorama suite next door. Id. ¶¶ 36-37. Manzella informed all of the patients and staff that they needed to leave the office immediately, and proceeded to rifle through filing cabinets, take photographs of the office, and seize personal cash from office employees. Id. ¶¶ 38-40.

Nouri arrived at 3058 Metro Parkway around this same time, and Manzella told him that he would "put him in jail" if he did not pay immediately. Id. ¶¶ 41-42. Nouri called the police, but they did not take action as the dispute appeared to be a civil manner. Id. ¶ 43.

Nouri offered several ways to satisfy the judgment, such as by letting Manzella take the x-ray machine in question, or by providing a corporate check, but Manzella refused. Id. ¶¶ 44-47. Around noon, Manzella called a locksmith, had the locks changed on all of the office suite doors, and instructed everyone to leave the premises. Id. ¶ 48.

Nouri left to obtain a cashier's check. Id. ¶ 49. Around 3:00 p.m., Nouri provided a cashier's check for $9,590.84 to Manzella, at which point Manzella provided the keys to the new locks on the office. Id. ¶¶ 51-52, 62.

Plaintiffs allege that Manzella's actions disrupted business at St. Peter, Healthorama, and the physical therapy clinic not only throughout the day on February 10, 2017, but the following

3

day as well, as patients needed to be rescheduled. Id. ¶¶ 53-57. Due to the disruption, patients were unable to have stitches removed when scheduled, or to have injections administered at the prescribed times. Id. ¶ 60. At least one patient's urgent medical needs were unmet, as a patient with a fractured leg bone had to be sent away. Id. ¶ 55.

On July 17, 2017, Plaintiffs filed a complaint seeking relief for violations of the Fourth and Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; trespass; tortious interference with business relationship; and intentional infliction of emotional distress.

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . ."). Rather, a complaint needs only enough facts to suggest that discovery may

4

reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Twombly, 550 U.S. at 556. Thus, a motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Directv, 487 F.3d at 476.

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001) (quoting Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted). Further, "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 19997) (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). "Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not 'rebut, challenge, or contradict anything in the plaintiff's complaint.'" Erve v. Henry Ford Cmty. College, No. 13-4705309, 2014 WL 4705309, at *2 (E.D. Mich. Sept. 22, 2014) (quoting Song v. City of Elyria, 985 F.2d 840, 842 (6th Cir. 1993)).

### III.     ANALYSIS

**A. 42 U.S.C. § 1983 – Violation of the Fourth Amendment**

In order to prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that "(1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileged, or immunities secured by the Constitution of laws of the United States." Fridley v. Horrighs, 291 F.3d 867, 871-872 (6th Cir. 2002). There is no dispute that

5

Manzella, as a court officer, was acting under color of state law. Plaintiffs' claims hinge on whether they suffered a deprivation of a right secured by the Constitution.

Plaintiffs allege that Manzella violated their Fourth Amendment rights to be free from unreasonable searches and seizures by seizing the property of Healthorama and St. Peter and shutting down the businesses for an entire day. Compl. ¶ 71. In his motion to dismiss, Manzella argues that Plaintiffs have failed to show that the seizure of their property was objectively unreasonable, because Manzella was acting pursuant to court order. Def. Mot. at 11-12 (Dkt. 13). He relies upon Soldal v. Cook County, 506 U.S. 56 (1992), where the Supreme Court reiterated that "'reasonableness is still the ultimate standard' under the Fourth Amendment." 506 U.S. at 71 (quoting Camara v. Municipal Ct. of City and Cty. Of San Francisco, 387 U.S. 523, 539 (1967)). The Court noted that a determination of reasonableness requires careful balancing of governmental and private interests, and stated that if "the officers [who seized the plaintiffs' property] were acting pursuant to a court order, . . . a showing of unreasonableness on these facts would be a laborious task indeed." Id.

However, Plaintiffs here have alleged that Manzella was not acting pursuant to a court order, and indeed the documents submitted to this Court show that there appears to be some question of fact on this point.[3] Additionally, they have alleged that Manzella seized the property of Healthorama and St. Peter, see compl. ¶ 71, when the judgment was against Nouri individually and the order provided for the seizure of Nouri's property. See Brindley v. Best, 192 F.3d 525, 531 (6th Cir. 1999) ("[E]ven a valid search warrant can turn into a[n] invalid general search if

---

[3] The Court may take judicial notice of the additional court filings submitted by the parties as they are matters of public record. See New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

officers flagrantly disregard the limitations of the warrant. Such action violates the Fourth Amendment. The test is whether the officer's actions were reasonable.") (internal citations omitted).

Manzella also claims that he is immune from liability because he was acting within his capacity as a court officer. See Def. Mot. at 12. Manzella cites a case from the Michigan Court of Appeals, Reinecke v. Sheehy, 209 N.W.2d 460 (Mich. Ct. App. 1973), to support his argument that a court order "completely protects a sheriff or constable from liability for any proper or necessary act done in its execution, even if the judgment or order is otherwise void." 209 N.W.2d at 465. But this is of no use to Manzella, as the Supreme Court has held that state-law immunities are irrelevant in § 1983 actions. See Howlett v. Rose, 496 U.S. 356, 376 (1990).

The Court finds that Plaintiffs have sufficiently alleged a claim pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment.

### B. 42 U.S.C. § 1983 – Violation of the Fourteenth Amendment

Plaintiffs also allege that Manzella's seizure of Healthorama and St. Peter's property and shut down of their business activities violated the due process clause of the Fourteenth Amendment. Compl. ¶ 76. "The doctrine that governmental deprivations of life, liberty are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." Bowers v. City of Flint, 325 F.3d 758, 763 (6th Cir. 2003) (quoting Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992)). One aspect of substantive due process is the right to be free from "arbitrary and capricious" action by the government, which is to say, free from conduct that "shocks the conscience." Id.[4] If a government agent is afforded

---

[4] A § 1983 claim based on an alleged violation of substantive due process "must be based either on a violation of an explicit constitutional guarantee (e.g., a fourth amendment illegal seizure violation) or on behavior by a state actor that shocks the conscience." Braley v. City of Pontiac, 906 F.2d 220, 225 (6th Cir. 1990). Plaintiffs do not state which of the two bases for a due process

7

"a reasonable opportunity to deliberate various alternative prior to electing a course of action," as Plaintiffs allege that Manzella was here, his action "will be deemed conscience-shocking if they were taken with 'deliberate indifference' toward the plaintiff's federally protected right." Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998)).

Manzella argues that Plaintiffs have not alleged conduct that "shocks the conscience," and notes that the Sixth Circuit does not extend the "shocks the conscience" standard to conduct that does not involve physical force. Def. Mot. at 10. Indeed, the Sixth Circuit has often stated as much. See, e.g., Tinney v. Richland County, 678 Fed. App'x 362, 368 (6th Cir. 2017) ("We have resisted application of shock-the-conscience claims in cases that do not involve physical force."); Choate's Air Conditioning & Heating Inc. v. Light, Gas, Water Division of City of Memphis, 16 Fed. App'x 323, 329 (6th Cir. 2001) ("While we have questioned the continued vitality of this strand of substantive due process jurisprudence, we nevertheless continue to recognize it in the exclusive context of cases involving physical abuse."); Kawecki ex rel Marlowe v. County of Macomb, Nos. 04-70907, 05-73498, 2008 WL 205241, at *24 (E.D. Mich. Jan. 24, 2008) (noting that the Sixth Circuit has "declin[ed] on a number of occasions to extend the 'shocks the conscience' standard to cases that do not involve physical force.").

The "shocks the conscience" standard "is not a font of tort law, but is instead a way to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation." Range v. Douglas, 763 F.3d 573, 589 (6th Cir. 2014). Plaintiffs have not alleged

---

violation they rely, only that "Manzella's actions . . . violated the Fourteenth Amendment of the Constitution" and "deprived Plaintiffs of their federal constitutional rights." Compl. ¶¶ 76-77. Because Plaintiffs already brought a separate claim under the Fourth Amendment, the Court analyzes this Fourteenth Amendment claim under the "shocks the conscience" standard.

conduct by Manzella that rises to the levels necessary to "shock the conscience." As such, his behavior cannot be said to deprive Plaintiffs of their rights under the Fourteenth Amendment. This claim is dismissed.

### C. Trespass

Plaintiffs allege that Manzella trespassed when he intentionally entered the office space of Healthorama and St. Peter without consent. Compl. ¶ 83. Under Michigan law, a trespass is "an unauthorized entry onto the private land of another." Moher v. United States, 875 F. Supp. 2d 739, 755 (W.D. Mich. 2012) (citing cases). "The trespasser must intend to enter or intrude on the plaintiff's land or real property without authorization to do so." Id. If a defendant's intrusion is authorized by law, there is no trespass. Id.

Manzella argues that he was not trespassing because he was acting pursuant to a valid court order. Def. Mot. at 13. He also argues that the protection against intrusion by court officers executing on a levy is limited to a home, and because he intruded upon Dr. Nouri's business, he was not trespassing. Id. However, as mentioned, Plaintiffs have alleged that Nouri was not validly executing the court order, and as such his entry into the interior of the medical offices was unauthorized. They have therefore stated a claim for trespass.

### D. Tortious Interference with Business Relationship

To state a claim for tortious interference with business relationship, a plaintiff must plead (i) the existence of a valid business relation or expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferer; (iii) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship has been disrupted. Lakeshore Cmty. Hosp., Inc. v. Perry, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995).

9

Manzella again argues that he is immune from liability because "he was acting reasonably within the scope of his employment and pursuant to a valid court order." Def. Mot. at 14. He argues that Mich. Comp. Laws § 691.1407(2) – which provides that officers of a governmental agency are immune from tort liability if he is acting or reasonably believes he is acting within the scope of his authority, the governmental agency is engaged in the exercise of a governmental function, and the officer's conduct does not amount to gross negligence – provides him with immunity from liability. However, the Michigan Supreme Court has clarified that "subsection 2 encompasses only _negligent_ tort liability. In subsection 3, the Legislature unambiguously expressed its intent to maintain the law of _intentional_ torts as it existed before July 7, 1986." Odom v. Wayne County, 760 N.W. 2d 217, 223 (Mich. 2008) (emphasis in original).

To be immune from liability for _intentional_ torts, a governmental employee must show (i) the acts were taken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority; (ii) the governmental employee was acting in good faith; that is, without malice; and (iii) that the challenged act was discretionary rather than ministerial. Odom, 760 N.W. 2d at 224-226. Plaintiffs have plausibly alleged that Manzella was not acting within the scope of his authority, either because the order was invalid or because Manzella's actions in shutting the facility down and turning away patients went beyond executing the court order. Manzella has not shown that he is entitled to governmental immunity.

Without immunity, Plaintiffs have stated a claim for tortious interference with a business relationship, as they have alleged that they had a business relationships with the patients at 3058 Metro Parkway that day; that Manzella was aware of this; that Manzella's actions breached this relationship; and that Plaintiffs suffered damages as a result.

**E. Intentional Infliction of Emotional Distress**

To state a claim for IIED under Michigan law, Plaintiffs must allege: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Dalley v. Dykema Gossett PLLC, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010). "The threshold for showing extreme and outrageous conduct is high." In re Estate of Bandemer, No. 293033, 2010 WL 3984653, at *3 (Mich. Ct. App. Oct. 12, 2010). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Walsh v. Taylor, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004) (quotation marks and citation omitted). It is not enough that the defendant acted with an intent that is tortious or even criminal, nor that defendant acted with malice or with an intent to inflict emotional distress. Graham v. Ford, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999). Rather, the test has been described as whether the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 909 (Mich. 1985).

Manzella argues that his conduct was the opposite of extreme and outrageous, because he waited five hours for Nouri to comply before locking the business. Def. Mot. at 15. He also argues that the Michigan Supreme Court has never adopted the tort of IIED into Michigan jurisprudence. Id. at 16.

While the Michigan Supreme Court may have never formally adopted the tort, the standards that would need to be met for such a claim have been laid out in Michigan law, as described above. See Melson ex rel. Melson v. Botas, 863 N.W.2d 674, 674 (Mich. 2015) (Markman, J., dissenting) (noting that "Michigan is one of only two states whose highest court has not dispositively addressed" IIED, but noting that the Michigan Court of Appeals had approved

11

it). While the standard is "high," the Court concludes at this stage that Plaintiffs have met it. Plaintiffs alleged that Manzella intentionally deprived patients of medical treatment, and such conduct may be said to be atrocious and intolerable. They have further alleged that Nouri suffered severe emotional distress as a result of being unable to see and care for his patients. Whether in fact that is true will have to await further factual development, but the claim at this early pleading stage is sufficiently plausible to survive a motion to dismiss. Accordingly, Plaintiffs have sufficiently stated a claim for the intentional infliction of emotional distress.

## IV. CONCLUSION

For the reasons above, Defendant Manzella's motion to dismiss (Dkt. 13) is granted in part and denied in part. Defendant shall answer the complaint by March 19, 2018.

SO ORDERED.

Dated: February 26, 2018　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 26, 2018.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　Case Manager