UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LABEED NOURI, M.D., et al.,

        Plaintiffs,                       Case No. 17-12322

vs.                                         HON. MARK A. GOLDSMITH

VITO MANZELLA,

        Defendant.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT (Dkt. 47) AND DENYING PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT (Dkt. 48)**

This matter is before the Court on the parties' competing motions for summary judgment.

The motions have been fully briefed. Because oral argument will not aid in the decisional process,

the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R.

Civ. P. 78(b). Plaintiffs allege that Defendant Vito Manzella's actions in executing an order to

seize the personal property of Plaintiff Labeed Nouri, M.D., were unreasonable and exceeded the

scope of that order. As a result of Manzella's alleged actions, Plaintiffs assert claims for violations

of the Fourth Amendment, pursuant to 42 U.S.C. § 1983; trespass; and tortious interference with

a business relationship.[1] For the reasons stated below, the Court grants in part and denies in part

Manzella's motion for summary judgment (Dkt. 47) and denies Plaintiffs' motion for partial

summary judgment (Dkt. 48).

---

[1] Plaintiffs have withdrawn their claim for intentional infliction of emotional distress. Pls. Resp.
to Def. Mot. at 4 (Dkt. 54).

# I. BACKGROUND

Nouri is an orthopedic surgeon, who owns and operates three businesses from a commercial building located in Sterling Heights, Michigan. Compl. ¶ 8 (Dkt. 1). These businesses include Plaintiff Health O Rama Urgent Care PLLC ("Healthorama"), Plaintiff St. Peter Medical Center, P.C. ("Medical Center"), and a physical therapy clinic. Id. ¶¶ 9-12. In January 2015, Nouri purchased an x-ray machine from Unitech Imaging, Inc. ("Unitech"), and a dispute arose between Nouri and Unitech regarding payment for the machine. Id. ¶¶ 16-17. Unitech obtained a default judgment in state court against Nouri, see Judgment, Ex. C to Def. Mot. (Dkt. 47-3), and on December 22, 2016, the court issued an order to seize property in the amount of $7,200.93, see Request and Order to Seize Property, Ex. C to Def. Mot. (Dkt. 47-3). The order authorized seizure of personal property belonging to Nouri, the sole defendant in that action; it also listed the Sterling Heights office as his address. Id.

On the morning of February 10, 2017, Manzella, a court officer, appeared with four other men at the Sterling Heights office to execute the order to seize. Compl. ¶ 26. The parties agree that Manzella demanded payment in the form of a certified check and refused to accept either a corporate check or an x-ray machine in satisfaction of the order to seize.[2] 11/13/18 Nouri Dep. at 7-9, Ex. F to Def. Mot. (Dkt 47-6). When Nouri failed to provide a certified check, Manzella called a locksmith to secure the office. Manzella Dep. at 27-28, Ex. D to Def. Resp. to Pls. Mot. (Dkt. 49-4).

According to Nouri, Manzella ordered all patients and medical staff to leave the office immediately, thereby disrupting business operations and resulting in the cancellation of many

---

[2] The x-ray machine offered was not the one that gave rise to the lawsuit; that machine was at a different location. 11/13/18 Nouri Dep. at 9-10, Ex. F to Def. Mot. (Dkt 47-6).

patients' appointments. Compl. ¶¶ 38, 48, 53-60. Although Nouri called the police, the responding officers determined that the dispute was a civil matter and consequently took no action. Id. ¶ 43. Shortly after Manzella secured the office, Nouri obtained and tendered a certified check in satisfaction of the order to seize. Report of Collection Activity, Ex. 8 to Pls. Resp. to Def. Mot. (Dkt. 54-9). Manzella, in turn, provided the keys to the new locks installed at the office. 11/13/18 Nouri Dep. at 12.

Following Manzella's seizure of their property, Plaintiffs filed the present action. At this stage of the litigation, three of Plaintiffs' claims remain: violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983; trespass; and tortious interference with a business relationship. Plaintiffs have filed a motion for partial summary judgment as to liability, arguing that the order to seize was invalid and that Manzella did not act within the scope of that order. Manzella, in turn, has filed a competing motion for summary judgment, arguing that he acted in accordance with a valid court order, that he is immune from liability, and that Plaintiffs have failed to establish concrete damages.

## II.  STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

## III.  ANALYSIS

### A.  42 U.S.C. § 1983 – Violation of the Fourth Amendment

Plaintiffs argue that Manzella violated their Fourth Amendment rights when he seized Plaintiffs' property and effectively terminated the business operations of non-debtors Medical Center and Healthorama. In opposition, Manzella primarily contends that his actions were reasonable as a matter of law because he was acting within his authority to execute a valid court order. In reply, Plaintiffs maintain that (1) the order to seize was invalid because it was not "endorsed" and (2) Manzella exceeded the scope of his authority under the order.

Under 42 U.S.C. § 1983, civil liability may be imposed against state actors who have deprived a citizen of his or her constitutional rights. Baynes v. Cleland, 799 F.3d 600, 607 (6th Cir. 2015). To prevail on a claim brought pursuant to § 1983, a plaintiff must demonstrate "(1)

the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Fridley v. Horrighs, 291 F.3d 867, 871-872 (6th Cir. 2002). There is no dispute that Manzella, a court officer, was acting under the color of state law. Rather, the parties contest whether the factual record supports Plaintiffs' contention that they were deprived of their Fourth Amendment rights.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. These protections apply in both the civil and criminal contexts. Soldal v. Cook Cty., 506 U.S. 56, 67 (1992). A seizure of property occurs when "'there is some meaningful interference with an individual's possessory interests in that property.'" Id. at 61 (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). A seizure of property is unconstitutional if the seizure is "objectively unreasonable, a determination that entails a careful balancing of governmental and private interests." Hensley v. Gassman, 693 F.3d 681, 688 (6th Cir. 2012) (citation omitted) (internal quotation marks omitted).

Turning first to the validity of the order to seize, Mich. Comp Laws § 600.6002(1) provides that officers receiving an execution to enforce judgment must first "endorse" the order by designating thereon the date and hour of receipt. Failure to comply with this endorsement requirement, however, does not necessarily invalidate an order if the surrounding circumstances do not warrant such a remedy. In Korda v. Oakland Cty. Sheriff, No. 290920, 2010 WL 3184519, at *1 (Mich. Ct. App. Aug. 12, 2010), the Michigan Court of Appeals confronted a case in which the trial court declined to hold that unendorsed executions of judgment were invalid. The appellate court upheld the trial court's reasoning that the purpose of the endorsement requirement was to

ensure compliance with Mich. Comp. Laws § 600.6002(2), which provides that "'[e]xecutions shall be made returnable not less than 20, nor more than 90 days, from that date [of endorsement].'" Id. The appellate court affirmed the trial court's conclusion that, in the absence of any dispute regarding either the timing of execution or any prejudice resulting from the lack of endorsement, invalidating the executions of judgment was not an appropriate remedy. Id. at *1-2.

In the present case, there are three different versions of the order to seize within the record. Two versions are unendorsed. Order to Seize, Ex. 6 to Pls. Resp. to Def. Mot. (Dkt. 54-7); Order to Seize, Ex. E to Compl. (Dkt. 1-6). The third version is endorsed by Manzella. Order to Seize, Ex. C to Def. Mot. (Dkt. 47-3). It cannot be determined from the record whether the order to seize was endorsed at the time Manzella executed it. Nevertheless, Plaintiffs have not advanced any argument that the order was stale or that the timing of the execution was otherwise defective under Mich. Comp. Laws § 600.6002(2). Nor have they alleged any prejudice stemming from the lack of endorsement. Consistent with Korda, a declaration that the order to seize is invalid is not warranted based on the present record.

The Court must next consider whether Manzella's execution of the order was objectively unreasonable. The parties offer differing accounts regarding Manzella's actions in executing the order. According to Nouri, he was contacted by his receptionist on the morning of February 10, 2017, when Manzella arrived at the office demanding payment of the default judgment. 11/13/18 Nouri Dep. at 5. Nouri directed his receptionist to provide Manzella a corporate check, which Manzella refused. Id. at 7. Although Nouri assured Manzella that he was on his way to the office, Nouri alleges that Manzella obtrusively occupied and disrupted the office by entering an interior door leading to patient exam rooms, ordering the patients and medical staff to leave, seizing personal cash from staff, and rifling through and photographing Medical Center's sensitive

6

business information. Compl. ¶¶ 35-40. When Nouri arrived at the office, he called his attorney, who informed Manzella that he could not enforce a judgment entered against Nouri personally against Medical Center and Healthorama. 11/13/18 Nouri Dep. at 8-9. Nouri then called the police, who arrived at the office but determined that they could take no action. Id. Nouri offered to permit Manzella to secure the room housing the x-ray machine – however, Manzella refused this offer, again ordered all patients and staff to leave the office, and directed a locksmith to secure the office. Id. at 10-11. At approximately 3:00 p.m., Nouri tendered a certified check for $9,590.84, in full satisfaction of the order, and Manzella furnished the keys to the new locks on the office suite. Compl. ¶¶ 51-52.

Although Manzella's account is similar to Nouri's, he denies that he obtrusively occupied and disrupted the office or that he intimidated any patients or staff. Specifically, Manzella maintains that, after being informed that Nouri was on his way to the office, he remained in the waiting room for approximately an hour without ordering anyone to leave. Manzella Dep. at 25. When Nouri failed to appear by 11:30 a.m., Manzella states that he called the locksmith. Id. at 27. Manzella claims that Nouri arrived with his attorney at 1:00 p.m., at which point the parties called the police. Id. at 28. After the police declined to take any action against Manzella, he and the locksmith proceeded to secure the office. Id. at 29. Shortly thereafter, Nouri provided the certified check, and Manzella returned the keys to the new locks. Def. Mot. at 7 (Dkt. 47).

Whether a valid court order authorizes an officer's seizure of property is relevant to a determination of whether that seizure was unreasonable. Because the governmental interest in effectuating a seizure unsupported by either a court order or exigent circumstances is "minimal at best," such circumstances would weigh toward a finding of unreasonableness. See Thomas v. Cohen, 304 F.3d 563, 575 (6th Cir. 2002) (finding police officers' eviction of the plaintiffs from

their residence was unreasonable when the eviction was premised not on a court order or exigent circumstances but rather on unverified representations by a third party).  Conversely, the Supreme Court has recognized that, where officers seizing property "act[ed] pursuant to a court order . . . a showing of unreasonableness on these facts would be a laborious task indeed."  Soldal, 506 U.S. at 71 (citations omitted).  Nevertheless, even where a seizure of property is authorized by a court order, the seizure may be found to be unreasonable if the officer exceeded the express terms of the order.  See Audio Odyssey, Ltd. v. Brenton First Nat'l Bank, 245 F.3d 721, 736 (8th Cir. 2001), aff'd en banc, 286 F.3d 498 (8th Cir. 2002).

Here, the express terms of the order to seize authorized Manzella to seize property as follows:

> Seize and sell, according to law, any of the personal property (as determined by the officer) of defendant(s) named above . . . that is not exempt from seizure, as will be sufficient to satisfy the plaintiff's demand, costs, and any statutory fees and expenses.  Personal property may include, but is not limited to motor vehicles or money, wherever located.

Order to Seize Property, Ex. C to Def. Mot. (Dkt. 47-3).  The order named Nouri as the only defendant, id., and, therefore, authorized Manzella to seize property belonging to Nouri, but not property of non-debtors Medical Center or Healthorama.  It is well-settled under Michigan law that "separate corporate entities will be respected," Seasword v. Hilti, Inc., 537 N.W.2d 221, 224 (Mich. 1995), and that corporations are considered legally distinct from their shareholders, even if a single shareholder holds all of the stock, Dep't of Consumer Indus. Servs. v. Shah, 600 N.W.2d 406, 411 (Mich. 1999).  This presumption may be disregarded only upon a showing of fraud, illegality, or injustice.  Shah, 600 N.W.2d at 412.  No such showing has been made here.

As detailed above, the parties' differing accounts of events present various factual questions that must be resolved by a jury.  A question of fact exists with respect to whether

Manzella caused a disruption effectively terminating Medical Center's and Healthorama's business operations. Specifically, a jury must determine whether Manzella immediately ordered patients and medical staff to leave the office; intimidated patients and staff; seized personal cash from staff; and searched through Medical Center's business files and patient examination rooms. Additionally, there is a factual question with respect to whether Manzella seized property belonging to Medical Center and Healthorama. A jury must evaluate whether the leasehold estate and the personal property within the office belonged to Nouri personally or to Medical Center and Healthorama, as the parties have made no specific allegations and adduced no concrete evidence resolving this issue. The resolution of these factual issues will bear on the legal question of reasonableness.

Construing the evidence in the light most favorable to Plaintiffs, a jury could reasonably conclude that the seizure was objectively unreasonable because Manzella's actions exceeded the scope of the order to seize. Specifically, a jury could find that Manzella effectively seized the business operations, personal property, and leasehold estate belonging to non-debtors Medical Center and Healthorama by ordering patients and staff to leave and arranging for the locks on the office to be changed. Additionally, a jury could reasonably conclude that Manzella's alleged search of Medical Center's files and sensitive business data – which have no apparent connection to Nouri's personal property – also exceeded the scope of the order. Though the order to seize listed the Sterling Heights office as Nouri's address, nothing in the order authorized Manzella to seize property belonging to Medical Center or Healthorama simply because it was located at this address. Accordingly, when construed in a light favorable to Plaintiffs, the record evidence would

support a jury finding that the seizure of the property was objectively unreasonable because Manzella exceeded the scope of the order.[3]

Manzella contends that his actions were reasonable because Nouri could have tendered a certified check at any time but chose not to, thus forcing Manzella to secure the x-ray machine to "protect the property subject to the order." Def. Mot. at 14. This argument is unavailing. An officer cannot justify an unconstitutional seizure on the ground that the debtor could have avoided the seizure simply by tendering the debt. See Audio Odyssey, 245 F.3d at 736 (although the plaintiff failed to pay an undisputedly valid debt, the officers' seizure of the plaintiff's real property was nevertheless held to be unconstitutional).

Although Manzella also asserts he is immune from liability with respect to Plaintiffs' Fourth Amendment claim, he erroneously relies on the standard applicable to governmental immunity for state law intentional torts, as opposed to the standard applicable to qualified immunity for federal claims. See Def. Mot. at 18-19 (Dkt. 47). Applying the correct standard – based on qualified immunity grounds – Manzella has not demonstrated that he is entitled to summary judgment. Government officials are shielded from civil liability under qualified immunity unless the plaintiff establishes that (1) the official's conduct violated a statutory or constitutional right and (2) the right at issue was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). As concluded above, whether

---

[3] Plaintiffs maintain that a jury could also conclude that Manzella's actions were unreasonable because he failed to offer Nouri the option of designating certain property as exempt from the levy under Mich. Comp. Laws § 600.6023(1)(e) as tools of his trade. This argument lacks merit. Nothing within the statutory framework requires a court officer to permit a judgment debtor to designate certain property as exempt at the time a seizure is made. Rather, the judgment debtor has the right to select exempt property only after inventory and appraisal of the property and before sale. Mich. Comp. Laws § 600.6026(1). A jury, therefore, could not conclude that Manzella acted unreasonably by failing to offer Nouri the option of selecting his exemptions.

Manzella violated Plaintiffs' Fourth Amendment right protecting against unreasonable seizure of property hinges on questions of fact and the jury's ultimate determination of whether Manzella's actions were objectively unreasonable. Further, the Fourth Amendment protection from unreasonable seizures of property absent express authorization through a court order or exigent circumstances is clearly established. See Thomas, 304 F.3d at 575.[4]

Finally, Manzella argues that Plaintiffs failed to enumerate concrete damages sustaining their Fourth Amendment claim. Plaintiffs allege they were damaged in the amount of the default judgment, Pls. Resp. to Def. Mot. at 3, which Manzella maintains would have been owed regardless of his actions. However, the $9,590.84 paid in satisfaction of the default judgment includes statutory fees and costs, including the locksmith fee and an hourly rate for the personnel used in executing the order to seize. Report of Collection Activity, Ex. 8 to Pls. Resp. to Def. Mot. (Dkt. 54-9). Whether a locksmith and the hours spent executing the order were reasonably necessary presents a factual question. Additionally, plaintiffs may recover nominal damages for claims asserting constitutional violations pursuant to 42 U.S.C. § 1983, even where they fail to prove actual damages. Murray v. Bd. of Trustees, Univ. of Louisville, 659 F.2d 77, 79 (6th Cir. 1981) ("While we accept as not clearly erroneous [the district judge's] finding that plaintiff failed to prove actual damages, the Supreme Court's holdings . . . require remand for the District Judge

---

[4] Manzella does not argue that he is entitled to absolute quasi-judicial immunity, which extends to persons performing tasks integral to the judicial process, including officers executing a court order. See Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). In any event, Manzella would not be entitled to summary judgment on this ground. In determining whether judicial immunity applies in the context of executing a court order, the Sixth Circuit has examined whether the officers' actions exceeded the scope of the court order. See, e.g., Cooper v. Parrish, 203 F.3d 937, 949-950 (6th Cir. 2000) (examining the express language of the temporary restraining order issued by the court and determining that the language was broad enough to authorize the officers' seizure of property). As concluded above, the evidence presented would permit a jury to conclude that Manzella's execution of the seizure exceeded the scope of the order.

to consider in this § 1983 action plaintiff's claims for nominal damages and attorney fees." (citation omitted)). Manzella's argument challenging Plaintiffs' alleged damages is, therefore, without merit.

In light of the factual disputes identified above, neither party is entitled to summary judgment with respect to Plaintiffs' constitutional claim.

### B. Trespass

A trespass is an unauthorized entry onto the private property of another. Cloverleaf Car Co. v. Phillips Petroleum Co., 540 N.W.2d 297, 302 (Mich. Ct. App. 1995). A trespasser must intend to intrude on another's real property without authorization to do so. Id. However, no trespass occurs if a defendant's intrusion on a plaintiff's private property is authorized by law. Moher v. United States, 875 F. Supp.2d 739, 755 (W.D. Mich. 2012).

In the present case, Manzella's entry onto the Medical Center and Healthorama premises was authorized pursuant to the order to seize listing the Sterling Heights office address as Nouri's address. As determined above, this order was valid even if it was not endorsed at the time of execution. The fact that Manzella may have thereafter exceeded the scope of that order does not negate the fact that his initial entry onto the premises was authorized. Manzella was additionally authorized as an invitee to enter the office premises "'for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" Socha v. Passino, 306 N.W.2d 316, 318 (Mich. Ct. App. 1981) (quoting Restatement (Second) of Torts § 332; see also Restatement (Second) of Torts § 345, cmt. c ("It is not necessary that the presence of the visitor be in any way of pecuniary advantage to the possessor, and a tax or customs collector who enters to perform his public duty is an invitee."). The record is devoid of any allegation that Manzella's presence at the offices became unauthorized. There are no allegations that Nouri, Nouri's attorney, or any Medical

Center or Healthorama staff member asked Manzella to leave the premises, or that Manzella refused to comply with such a request. Because the record is clear that Manzella's entry upon the Medical Center and Healthorama premises was authorized, summary judgment in favor of Manzella with respect to the trespass claim is warranted.

### C. Tortious Interference with a Business Relationship

In asserting a claim for tortious interference with a business relationship, Plaintiffs allege that Manzella's disruption of Medical Center's and Healthorama's business operations resulted in damage to Plaintiffs' reputation and the loss of patients. The elements of tortious interference with a business relationship are as follows:

> [1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3] an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [4] resultant damage to the plaintiff.

BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich., 552 N.W.2d 919, 925 (1996). Where the interference alleged was a lawful act, a plaintiff must demonstrate that it was undertaken with malice and without justification by showing, "with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." Id.

Manzella does not dispute the first two elements of the claim, namely that Medical Center and Healthorama had valid business relationships with their patients and that Manzella was aware of those relationships. Rather, Manzella contends that Plaintiffs are unable to demonstrate that he acted with malice and without justification because he was acting pursuant to a valid court order. But consistent with the above discussion, the record, when viewed in a light favorable to Plaintiffs, would support a finding that Manzella exceeded the scope of the court order by enforcing it against non-debtors Medical Center and Healthorama. A jury could reasonably conclude that Manzella acted maliciously and without justification when he ordered patients and staff to leave the office

13

in order to seize the entire premises, Compl. ¶¶ 38, 48 (Dkt. 1), especially after he was made aware

by Nouri's attorney that he could not enforce a judgment entered against Nouri personally against

the two businesses, 11/13/18 Nouri Dep. at 9, Ex. F to Def. Mot. (Dkt. 47-6). A jury could also

reasonably find that Manzella's decision to secure the entire office was malicious and without

justification in light of Nouri's offer to secure only the room in which the x-ray machine was

housed. 11/13/18 Nouri Dep. at 10-11.

Next, Manzella argues that Plaintiffs are unable to demonstrate the fourth element, concrete

damages resulting from the alleged tortious interference. A claim for tortious interference requires

proof of actual damages. Wilkerson v. Carlo, 300 N.W.2d 658, 659 (Mich. Ct. App. 1980). The

following types of damages are recoverable in a successful tortious interference suit:

> (a) the pecuniary loss of the benefits of the contract or the prospective relation;
> (b) consequential losses for which the interference is a legal cause; and
> (c) emotional distress or actual harm to reputation, if they are reasonably to be
> expected to result from the interference.

Great N. Packaging, Inc. v. Gen. Tire & Rubber Co., 399 N.W.2d 408, 412 (Mich. Ct. App. 1986)

(quoting Restatement (Second) of Torts § 774A(1)) (internal quotations omitted).

Nouri stated in his verified complaint and during his deposition that Plaintiffs suffered

pecuniary loss through the loss of patients. Compl. ¶¶ 61, 89; 11/13/18 Nouri Dep. at 13.

Regarding lost profits, uncertainty as to the amount of damages does not preclude recovery, as

distinct from uncertainty as to the fact of damages, which will bar recovery. Bonelli v.

Volkswagen of Am., Inc., 421 N.W.2d 213, 226 (Mich. Ct. App. 1988). Indeed, the law does not

require "a higher degree of certainty than the nature of the case permits." Body Rustproofing, Inc.

v. Mich. Bell Tel. Co., 385 N.W.2d 797, 800 (Mich. Ct. App. 1986). Through Nouri's statements,

Plaintiffs have adequately supported their allegation that they lost patients and revenue as a direct

result of Manzella's seizure of the office, even if Plaintiffs have not adduced evidence regarding the precise monetary value of that harm.

Additionally, Plaintiffs allege reputational harm, which is recoverable if the damage is a reasonably foreseeable consequence of the alleged interference. See Great N. Packaging, 399 N.W.2d at 412. Reputational harm and loss of good will may be recovered by corporations in addition to pecuniary losses. Unibar Maint. Servs., Inc. v. Saigh, 769 N.W.2d 911, 924, 926 (Mich. Ct. App. 2009). Nouri stated during his deposition that, for months following Manzella's closure of the office, the community speculated that the FBI shut down the office. 12/6/18 Nouri Dep. at 7, Ex. G to Def. Mot. (Dkt. 47-7). As a result, some patients discontinued their care with Plaintiffs, while others returned and inquired about the disturbance. Id. at 8. Based on Plaintiffs' narrative of events, such reputational harm and loss of good will within the community would certainly have been reasonably foreseeable consequences of Manzella's alleged misconduct. Accordingly, summary judgment is not warranted with respect to Plaintiffs' tortious interference claim for failure to demonstrate concrete damages.

Finally, Manzella asserts that he is shielded from liability on Plaintiffs' tortious interference claim by the doctrine of governmental immunity. Governmental immunity precludes governmental officials' civil liability for intentional torts under the following circumstances:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> (c) the acts were discretionary, as opposed to ministerial.

Odom v. Wayne Cnty., 760 N.W.2d 217, 228 (Mich. 2008). A lack of good faith is described as "malicious intent, capricious action or corrupt conduct or willful and corrupt misconduct . . . ." Id. at 225 (internal quotation marks omitted).

Although the order to seize accorded Manzella some measure of discretion in its execution, see Order to Seize Property, Ex. C to Def. Mot. (directing authorized court officer to "[s]eize and sell, according to law, any of the personal property (as determined by the officer) of defendant(s) named above . . . ."), Manzella has not established as a matter of law, based on the current record, the first two elements of governmental immunity. Consistent with the Court's holdings above, whether Manzella was acting or believed he was acting within the scope of his authority under the order to seize is a question of fact. Likewise, a jury could reasonably conclude that Manzella did not act in good faith or acted with malicious intent in executing the order. Manzella has, therefore, not established that he is entitled to governmental immunity as a matter of law.

In light of the factual questions identified with respect to the tortious interference claim, neither party is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Manzella's motion for summary judgment (Dkt. 47). Specifically, the Court grants Manzella's motion for summary judgment with respect to Plaintiffs' claim for trespass and denies the motion with respect to all other claims. The Court denies Plaintiffs' motion for partial summary judgment (Dkt. 48).

SO ORDERED.

Dated: September 10, 2019                         s/Mark A. Goldsmith
    Detroit, Michigan                              MARK A. GOLDSMITH
                                           United States District Judge